Joel E. Tasca
Nevada Bar No. 14124
BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
Telephone: 702.471.7000
Facsimile: 702.471.7070
tasca@ballardspahr.com

*Attorneys for Defendant
JPMorgan Chase Bank, N.A.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER PETRAS,<br><br>Plaintiff,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; EQUIFAX INFORMATION SERVICES LLC; AND, EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendants. | CASE NO. 2:20-cv-00874-RFB-BNW<br><br>**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1, Defendant JPMorgan Chase Bank, N.A. ("Chase") moves for summary judgment on Plaintiff Christopher Petras' claim against it for alleged violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* Chase bases this motion on the following points and authorities, the attached declaration and exhibits, the documents in the record, and any argument the Court may hear.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.    INTRODUCTION

In this Fair Credit Reporting Act ("FCRA") lawsuit, Plaintiff alleges that Chase failed to conduct a reasonable investigation in response to certain disputes he submitted claiming that alleged fraudsters stole his identity and opened a Chase credit card account in his name without his knowledge or authorization. Entry of summary

...

judgment in Chase's favor is warranted because its investigation confirmed that Plaintiff opened the account at a Chase branch by filling out an application and providing two forms of identification.[1] Critically, Plaintiff conceded the same at his deposition and testified that he opened the account as part of a business arrangement with one of the alleged fraudsters whom he also added as an authorized user on the account. Thus, not only was Chase's investigation reasonable under the FCRA, its findings proved true and accurate.

Likely recognizing there is no question of fact regarding opening of the account, Plaintiff appears to be trying to pivot to a new theory of liability. Initially, there is no question that Plaintiff brought suit claiming that Chase failed to investigate a fraudulent account *opening*. (ECF No. 1, Compl. ¶ 23 ("***Plaintiff did not open the fraudulent accounts*** nor did Plaintiff authorize the Fraudsters to do so in Plaintiff's name.") (emphasis added), ¶ 35 (alleging that Fraudsters "utilized Plaintiff's information without Plaintiff's prior knowledge or consent ***to open an account with Chase***.") (emphasis added)). These allegations are consistent with the description of the dispute—*viz.*, "account fraudulently opened"—contained in all of the Automated Credit Dispute Verifications ("ACDVs") that Chase received from the consumer reporting agencies ("CRAs") notifying Chase of Plaintiff's dispute.

But, based on Plaintiff's counsel's examination of witnesses at deposition in this case, Plaintiff—without having sought to amend the Complaint[2]—appears to be trying to transform his fraudulent account opening theory into something else. While not entirely clear, it appears that Plaintiff is now positing that—although he opened the

---

[1] Although not relevant to the instant summary judgment motion, Chase notes for context that (1) the alleged fraudulent charges on the Chase card that prompted Plaintiff's credit reporting disputes totaled approximately $2200, and (2) the alleged fraudulent Chase trade line that Plaintiff disputed was removed from Plaintiff's credit report (as a result of a "block" directive from Trans Union) approximately one month after Chase responded to Plaintiff's disputes.

[2] The deadline to seek amendment of pleadings passed on September 8, 2020. (ECF No. 18).

Chase account himself—the purported fraudsters' alleged manipulation of Plaintiff absolves him of responsibility for the account he opened, the person he made authorized user on the account, and the charges she made using the credit card she received as a result.

Chase sympathizes with Plaintiff if he was the victim of such manipulation, but that does not mean that Chase is liable under the FCRA. In fact, Plaintiff's new and unpled theory suffers from a number of fatal defects. Initially, the law does not permit Plaintiff to change the theory pled in his Complaint for the first time in opposition to summary judgment. In addition, the scope of Chase's investigation of Plaintiff's dispute was reasonable and appropriate because Chase was advised by the CRAs that Plaintiff's dispute was one for fraudulent account opening, and nothing in Plaintiff's submissions accompanying his dispute notified Chase of the dispute Plaintiff now contends he ***meant*** to make. Even if Chase had such notice, Plaintiff's new theory presumes that Chase should have resolved complicated legal questions regarding legal capacity, and actual/apparent authority, as part of its FCRA investigation into Plaintiff's credit reporting dispute, and FCRA case law is clear that a data furnisher has no such obligation.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Plaintiff Opens His Chase Credit Card Account At A Chase Branch, and He Obtains An Authorized User Card On The Account For Angela Whitfield

Around 2013, Plaintiff and his girlfriend began spending time with Earnest McCullough and Angela Whitfield, whom Plaintiff and his girlfriend met during a visit by Mr. McCullough and Ms. Whitfield to Las Vegas.[3] Over the next few years, Plaintiff met and socialized in-person with Mr. McCullough and Ms. Whitfield multiple times, and communicated with them over text and social media.[4]

---

[3] *See* Ex. 1, C. Petras Tr. 56:16-22.

[4] *Id.* at 57:5-23.

On August 7, 2017, during one of Ms. Whitfield's visits to Las Vegas, Plaintiff and Ms. Whitfield physically went to a Chase branch together to open a joint credit card account.[5] Plaintiff and Ms. Whitfield were contemplating starting a business together, and they planned to use the Chase account for business expenses.[6] Plaintiff provided his driver's license and military identification to the branch representative and opened the credit card in his name.[7] At the time of the account opening, Plaintiff also added Ms. Whitfield as an authorized user on the Chase account.[8] Under the applicable cardholder agreement, Ms. Whitfield, as an authorized user, was entitled to receive a credit card and use the account, and Plaintiff—as the primary cardmember—was responsible for her use of the account.[9]

### B. Plaintiff Disputes That He Opened The Chase Account, Which Chase Correctly Rejects

On November 11, 2019, Plaintiff submitted written dispute letters to Experian and Equifax regarding alleged identity theft by Ms. Whitfield and Mr. McCullough, concerning both Plaintiff's Chase credit card, and another credit card of Plaintiff's issued by Navy Federal Credit Union ("Navy Federal").[10]

On November 19, 2019, Chase received an ACDV from Equifax concerning Plaintiff's dispute.[11] On November 27, 2019, Chase received an ACDV from Experian

---

[5] *Id.* at 64:2-11; Ex. 2, ACDVs (showing account-opening date).

[6] Ex. 1, C. Petras Tr. at 63:6-8.

[7] *Id.* at 69:3-14.

[8] *Id.* at 67:4-6.

[9] *See* Ex. 3, Pl.'s Cardmember Agreement at 3 ("You are responsible for any use of your account by an authorized user or anyone else that you permit to use your account. You must notify us if you want them to stop using your account. You are also responsible for getting any cards, checks or other means of accessing your account from your authorized user.").

[10] Compl. ¶ 36; Ex. 4, Pl.'s Experian Dispute Cover Letter ("Dispute Cover Letter").

[11] Ex. 5, Wade Decl. ¶ 3 (ECF No. 39-1); Ex. 2, ACDVs.

BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
702.471.7000 FAX 702.471.7070

that also concerned Plaintiff's dispute.[12] On November 28, 2019, Chase received a second ACDV from Equifax on Plaintiff's dispute.[13] All of these ACDVs described Plaintiff's dispute as follows: "Claims true Identity fraud, account fraudulently opened."[14]

Upon receiving these ACDVs, Chase employee, Jose Mendoza, routed the disputes to Chase's fraud investigation department.[15] On November 30, 2019, Chase employee, Jazmyn Carey, investigated Plaintiff's dispute by reviewing his account information against Chase's Liability List.[16] Chase's Liability List is designed to assist Chase in evaluating whether an account was fraudulently opened. It requires Chase fraud investigators to, among other things, investigate: (1) whether the credit card application was applied for in a branch; (2) whether there is a signed application for the credit card at issue; (3) if payments have been made in the complaining party's name; (4) if there have been communications between Chase and the complaining party regarding the account at issue; and (5) the existence of any authorized users on the account besides the primary cardholder.[17]

Using the Liability List, Ms. Carey found that Plaintiff personally opened the Chase account in a branch using two forms of government-issued ID.[18] Ms. Carey also found that, in 2017 after the account was opened, Plaintiff verified the validity of certain transactions on the Chase card with a Chase representative via telephone.[19]

---

[12] Ex. 2, ACDVs.

[13] *Id.*

[14] *Id.*

[15] Ex. 6, R. Nolte Tr. 18:20-19:2.

[16] *See id.* at 21:19-22:5; Ex. 7, C3 Memos at 7.

[17] *See* Ex. 6, R. Nolte Tr. at 22:6-19.

[18] *See* Ex. 6, R. Nolte Tr. at 28:20-24.

[19] *Id.* at 28:25-29:3.

Ms. Carey also verified that all transactions on the card not made by Plaintiff were made under an authorized user's name.[20] Based on this information, Ms. Carey concluded that sufficient evidence existed to confirm the validity of Plaintiff's Chase account.[21]

On December 1, 2019, Chase employee, Richard Paulino, reviewed Ms. Carey's decision, ensured that her investigation notes correlated with her ultimate conclusion, and returned the ACDV responses back to Equifax and Experian.[22]

On December 31, 2019, Chase received a Block Trade notification from TransUnion regarding Plaintiff's Chase account.[23] In response, Chase employee, Kimberly Dunlap, conducted a second investigation into the account and found that there was sufficient evidence that Plaintiff was liable on the Chase card.[24] Nevertheless, because Chase had received a Block Trade notification from a CRA, Chase was required to suppress all reporting on Plaintiff's Chase account, which it did on January 2, 2020.[25]

### C. Additional Facts Would Bar Plaintiff's New And Unpled Theory

Chase submits that the above facts are sufficient to grant Chase summary judgment on the FCRA claim Plaintiff has actually pled. However, based on discovery, Chase anticipates Plaintiff will attempt to re-write his credit reporting dispute. To the extent the Court considers Plaintiff's anticipated new and unpled theory that his credit reporting dispute was for something *other than* fraudulent account opening, the undisputed facts below may become relevant.

---

[20] *Id.* at 29:3-5.

[21] *Id.* at 35:18-36:1.

[22] *Id.* at 59:15-60:9; *see also* Ex. 2, ACDVs.

[23] Ex. 5, Wade Decl. ¶ 5; Ex. 2, ACDVs.

[24] *See* Ex. 6, R. Nolte Tr. at 43:20-45:2;153:23-154:2.

[25] Ex. 5, Wade Decl. ¶ 5; Ex. 6, R. Nolte Tr. at 45:7-9; 153:23-154:6.

Plaintiff submitted the same package of documents with each of his written disputes to the CRAs, including: (1) his dispute cover letter; (2) a police report; (3) a May 24, 2019 demand letter to Mr. McCullough; (4) text messages between Plaintiff and Mr. McCullough; (5) five medical documents concerning Plaintiff's Asperger's syndrome condition; (6) account statements for the Chase account; (7) account statements for the Navy Federal account; (8) pages from Plaintiff's credit reports; and (9) Plaintiff's driver's license.[26]

More detail on these documents submitted by Plaintiff with his disputes is as follows:

- Plaintiff's dispute letters (which were identical for each dispute) state that "Between 2016 – 2018, Earnest McCullough, and his girlfriend, Angela Whitfield, defrauded me and took advantage of me and stole my identity. I have autism/aspersers [sic]. Because of my condition, I sometimes have trouble determining people's honest intentions and I trusted Earnest."[27] Plaintiff then stated that he was "disputing" three credit card accounts, including the Chase account.[28] Plaintiff explained: "The above accounts and balances were NOT charged by me. They were charged by Earnest and his girlfriend without permission. I never received any of that money. They are the result of identity theft and not my fault. You should go after these scammers and not me. I live in Nevada and never received any Chase card."[29] Plaintiff attached the Chase account statements to his dispute letter, stating that the listed Michigan address is not his address: "Please remove this address from my

---

[26] Compl. ¶ 40; *see also* Ex. 4, Dispute Cover Letter.

[27] Ex. 4, Dispute Cover Letter.

[28] *Id.*

[29] *Id.*

credit. You are only helping these scammers when you put their address on my credit. I have never lived in Michigan. I've never been to Michigan in my life . . . this is identity theft."[30] Plaintiff concluded his letter with: "I am attaching proof of this identity theft, including texts and a police report. I am also including my ID as proof of my identity."[31]

- The police report that Plaintiff submitted reflects that Plaintiff complained to the police that Mr. McCullough had made around $22,000 of unauthorized charges on the Navy Federal credit card,[32] but it does not reference the Chase card at all, much less complain that anyone had made unauthorized charges or otherwise misused his Chase account.[33]

- Plaintiff's May 24, 2019 demand letter to Mr. McCullough relates only to the incident involving Mr. McCullough's alleged misuse of the Navy Federal card, and it does not relate in any way to the Chase card or any alleged fraudulent use of it.[34]

- The text messages that Plaintiff submitted with his disputes are messages between Plaintiff and Mr. McCullough discussing the incident involving the Navy Federal card, and they do not relate in any way to the Chase card.[35]

- The medical reports that Plaintiff submitted regarding his Asperger's condition pre-date Plaintiff's opening of the Chase card by several years,

---

[30] *Id.*

[31] *Id.*

[32] Ex. 8, Police Report.

[33] *See* Ex. 8, Police Report; Ex. 1, C. Petras Tr. at 78:24-79:7.

[34] *See* Ex. 9, Demand Letter; Ex. 1, C. Petras Tr. at 81:19-82:2.

[35] Ex. 10, Text Messages; Ex. 1, C. Petras Tr. at 83:5-17.

- and thus they obviously do not mention the Chase card. Notably, none of these reports state that Plaintiff lacked the legal capacity to contract.[36]
- The Chase card statements that Plaintiff submitted reflect transactions that occurred in both Nevada, where Plaintiff lives, as well as in Michigan, where the card's authorized user, Ms. Whitfield, lived.[37]
- The pages of the credit reports that Plaintiff submitted—as related to the Chase card—reflect Chase's then-current reporting of the Chase account, and they did not anywhere reflect fraudulent use of the Chase card.[38]
- Plaintiff's driver's license was simply his driver's license, and thus it said nothing about the Chase card.[39]
- Plaintiff's Navy Federal account statements involved only the Navy Federal account, and they thus said nothing about the Chase card.[40]

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 authorizes summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To do so in a case where, as here, the non-moving party bears the burden of proving a claim, the moving party may either: (1) present evidence to negate an essential element of the non-moving party's case; or (2) demonstrate that the non-moving party lacks evidence to

---

[36] Ex. 11, Medical Reports.

[37] *See* Ex. 12, Chase Statements.

[38] *See* Ex. 13, Credit Reports.

[39] *See* Ex. 14, Driver's License Copy.

[40] *See* Ex. 15, Navy Federal Statements.

establish an element essential to that party's case. *Id.* at 323–24; *see also Walker v. State Farm Mut. Auto Ins. Co.*, 259 F. Supp. 3d 1139, 1144 (D. Nev. Apr. 26, 2017).

Once the moving party satisfies its initial burden, the burden shifts to the non-movant to "go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue of fact for trial." *Walker*, 259 F. Supp. 3d at 1144. The non-moving party cannot defeat summary judgment by relying on mere speculation, conjecture, or fantasy. *O.S.C. Corp. v. Apple Comput., Inc.*, 792 F.2d 1464, 1467 (9th Cir. 1986); *accord Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.") (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). If the non-moving party fails to carry her burden, then the "court has a duty to grant the motion for summary judgment. *O.S.C. Corp.*, 792 F.2d at 1467.

## IV.   CHASE IS ENTITLED TO SUMMARY JUDGMENT

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). To ensure accurate credit reporting, the FCRA imposes duties on furnishers, such as banks and credit card issuers. *Gorman*, 584 F.3d at 1153. Under Section 1681s-2(b) of the FCRA, those duties are triggered after a furnisher receives notice of a dispute from a CRA. *Id.* at 1154. Specifically, after receiving notice of a dispute, a furnisher must: (1) "conduct an investigation with respect to the disputed information"; (2) "review all relevant information provided by the [CRA]"; and (3) "report the results of the investigation to the [CRA]." § 1681s-2(b)(1)(A)-(C)." If the furnisher's investigation concludes that the disputed information is "incomplete or inaccurate or cannot be verified," the furnisher must report the results of the investigation to the CRA, and either: (1) modify the disputed information;

(2) delete the disputed information; or (3) permanently block the reporting of the disputed information. § 1681s-2(b)(1)(D)-(E).

To recover damages for an FCRA violation, a plaintiff must demonstrate that the defendant's purported violation caused actual damages. *See* 15 U.S.C. § 1681o(a); *Basconcello v. Experian Info. Solutions, Inc.*, 2017 U.S. Dist. LEXIS 39844, at *30 (N.D. Cal. Mar. 20, 2017). A plaintiff may only recover statutory and punitive damages if he or she shows that a furnisher willfully violated the FCRA. 15 U.S.C. § 1681n(a).

### A. The Undisputed Facts Demonstrate That Chase's Investigation Was Reasonable As A Matter Of Law

The Ninth Circuit has held that a furnisher's investigation must be "reasonable." *Gorman*, 584 F.3d at 1157. In determining whether an investigation was reasonable, "[t]he pertinent question is . . . whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id.* (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)). Moreover, [a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Gorman*, 584 F.3d at 1161. Importantly, the plaintiff has the burden of demonstrating that an investigation was unreasonable. *Gustafson v. Experian Info. Solutions, Inc.*, 2015 U.S. Dist. LEXIS 71280, at *10 (C.D. Cal. June 2, 2015) (citing *Gorman*, 584 F.3d at 1157. "[S]ummary judgment is not precluded altogether on questions of reasonableness," and is appropriate "when only one conclusion about the conduct's reasonableness is possible." *Gorman*, 584 F.3d at 1157.

Plaintiff has not presented sufficient evidence that Chase's investigation was unreasonable to withstand summary judgment. As noted above, the ACDVs that Equifax and Experian sent Chase described the dispute as one for fraudulent account opening.[41] This was the *only* dispute presented via the ACDVs to Chase for

---
[41] Ex. 2, ACDVs.

investigation. Chase's Credit Bureau Department received the ACDVs, saw the nature of the dispute described in the ACDVs, and appropriately routed the ACDVs to the fraud investigation department. Chase employee, Jazmyn Carey, then conducted the investigation of Plaintiff's fraudulent account opening claim, which included reviewing the account information against Chase's Liability List.[42] Ms. Carey verified that, using two forms of government-issued ID, Plaintiff personally opened the account at issue in a Chase branch.[43] She also noted that Ms. Whitfield was made an authorized user on the account at the time it was opened.[44] In addition, Ms. Carey found that in 2017, Plaintiff verified credit card transactions with a Chase representative via telephone.[45] Moreover, Ms. Carey verified that the Michigan-based transactions were made under an authorized user's—Ms. Whitfield's—name.[46] In addition to Ms. Carey's investigation and Mr. Paulino's review, Chase employee Kimberly Dunlap conducted a second investigation in response to a Block Trade notification from Transunion, and came to the same conclusion as Ms. Carey.[47]

Based on this evidence, Chase's investigation was reasonable as a matter of law. Perhaps the best proof of the investigation's reasonableness is that the investigation's conclusion turned out to be indisputably accurate: as Plaintiff testified at deposition, Plaintiff ***did*** in fact open the Chase account. This admission is fatal to Plaintiff's claim against Chase and should be the end of the matter.

---

[42] *See* Ex. 6, R. Nolte Tr. at 22:6-19.

[43] *See id.* at 28:20-24.

[44] *See id.* at 36:24-37:1.

[45] *See id.* at 28:25-29:3.

[46] *See id.* at 29:3-5.

[47] *See id.* at 43:20-45:2;153:23-154:2.

### B. The Court Should Reject Plaintiff's Anticipated New And Unpled Theory As Well

Plaintiff's counsel has essentially previewed how he hopes his client will escape his admission and its impact on the dispute actually raised. This end-run can be no more successful. Plaintiff's anticipated unpled theory – that Chase should have realized during its investigation that what Plaintiff actually was claiming was that he should have been absolved of opening the account and giving a card to Ms. Whitfield because of the alleged fraudsters' manipulation – is just as fatally flawed.

#### 1. Plaintiff May Not Raise A New Theory In Opposition To Summary Judgment

As this Court recently recognized in the context of an FCRA claim, a plaintiff cannot avoid summary judgment by raising a new theory in opposition to summary judgment:

"[A] plaintiff cannot raise a new theory for the first time in opposition to summary judgment." *Patel v. City of Long Beach*, 564 Fed. Appx. 881, 882 (9th Cir. 2014) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000)). "Allowing a plaintiff to proceed on a new theory would prejudice defendants because '[a] complaint guides the parties' discovery putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.'" *Id.* (citing *Coleman*, 232 F.3d at 1292).

*Mainor v. AcctCorp of S. Nev.*, 2019 U.S. Dist. LEXIS 167547, *11 (D. Nev. Sept. 28, 2019).

Here, as noted above, Plaintiff's Complaint in this case repeatedly alleges his claim as one in which Chase allegedly failed to reasonably investigate a dispute for fraudulent account *opening*. As the above-cited case law instructs, Plaintiff cannot now change his theory to something else just to avoid summary judgment.

### 2. Chase Was Never Notified Of The Nature Of The Dispute Plaintiff Now Appears To Be Claiming He Intended

Courts within this Circuit have explained that the scope and parameters of a furnisher's FCRA investigation of a consumer dispute are defined by the information that the CRAs provide to the furnisher as part of the notice of dispute:

The Ninth Circuit recognizes that "[t]he pertinent question [in a furnisher liability case] is . . . whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman, supra*, 584 F.3d at 1157. . . . Indeed, the parameters and scope of whether the furnisher's investigation was reasonable depends on the amount and type of information provided to it from the CRA: Experian. *Gorman, supra*, at 1159 ("We conclude that, as in the case of the first notice of dispute, [Furnisher] could not reasonably have been expected to investigate Gorman's challenge to the Four Peaks charge based on the vague and inaccurate information it received from the CRAs in these notices.").

*Personius v. Specialized Loan Servicing LLC*, 2017 U.S. Dist. LEXIS 216330, at *7-8 (C.D. Cal. Nov. 22, 2017) (citations omitted).

Here, as explained above, the ACDVs that Chase received from the CRAs all described the dispute as "account fraudulently opened." There was no way for Chase to have determined from that description that Plaintiff expected Chase to investigate some form of alleged wrongdoing by the purported fraudsters ***other than*** fraudulent account opening.

The only other description of Plaintiff's dispute was in his dispute letter included with the ACDVs. As discussed above, however, the dispute letter was vague and imprecise as to what Plaintiff claimed had happened to him. Plaintiff used words and phrases like "stole my identity," "identity theft," and "fraud" in the letter, all of which were consistent with his ACDVs' (inaccurate) claim that the account was opened by someone else without his authorization. Nowhere in the dispute letter does Plaintiff

acknowledge that he himself opened the Chase account, or that he made Ms. Whitfield an authorized user on the account. Nor does he then claim that his real complaint was that the purported fraudsters took advantage of him by manipulating him, such that his responsibility for the account and its balance should be barred.

Likewise, none of the other documents Plaintiff submitted with his dispute suggested that Plaintiff had been taken advantage of by the alleged fraudsters on his Chase card. His Navy Federal account was discussed almost exclusively. As explained above, the most significant of the documents (*i.e.*, the police report, the demand letter to Mr. McCullough, the text messages with Mr. McCullough) related exclusively to Plaintiff's allegation regarding Mr. McCullough's alleged misuse of Plaintiff's Navy Federal credit card. The Chase account statements reflected transactions in Michigan; however, that is where the card's authorized user, Ms. Whitfield, lived. An "authorized" user is just that—she is **authorized to use** the account, and thus the use of the account in the authorized user's hometown would not suggest any fraudulent use of the card to Chase. Notably, there were also charges on the account statements made in Nevada, which is where Plaintiff lived.[48]

Because the CRAs did not provide Chase any document setting forth the non-responsibility dispute that Plaintiff now appears to be claiming, Chase cannot have been expected to investigate such a dispute, and thus cannot be liable for a dispute investigation it was not asked to make.[49]

### 3. Chase Had No Duty Under The FCRA To Resolve Legal Questions

Even if Plaintiff had pled his anticipated new theory, and even had his "real" complaint been presented to Chase, his claim still would fail. As courts have

---

[48] *See* Ex. 12, Chase Statements.

[49] Because neither the ACDVs nor any of the other documents submitted therewith notified Chase as to Plaintiff's "real" dispute, Plaintiff also cannot demonstrate that a reasonable investigation would have led Chase to accept his claim. For that reason, Plaintiff also cannot cannot meet the proximate causation element of his FCRA claim. *See* 15 U.S.C. § 1681o(a) (violation of FCRA must "result" in recoverable damages).

BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
702.471.7000 FAX 702.471.7070

repeatedly explained, "plaintiffs suing furnishers for violating the FCRA by conducting inadequate investigation are required to show 'factual inaccuracy, rather than the existence of disputed legal questions,' because 'furnishers are neither qualified nor obligated to resolve matters that turn[] on questions that can only be resolved by a court of law.'" *Gross v. CitiMortgage, Inc.*, 2020 U.S. Dist. LEXIS 187386, at *29-30 (D. Ariz. Oct. 8, 2020) (quoting *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)). *Accord Mamisay v. Experian Info. Solutions, Inc.*, 2017 U.S. Dist. LEXIS 40793, *11-12 (N.D. Cal. Mar. 2017). Thus, "[a] furnisher cannot be expected to report information only after independently addressing a possible legal objection as to the status of a debt." *Murphy v. Ocwen Loan Servicing, LLC*, 2014 U.S. Dist. LEXIS 21573, *22 (E.D. Cal. Feb. 18, 2014). *See also Robinson v. TransUnion, LLC*, 2016 U.S. Dist LEXIS 130783, at * 6 (N.D. Cal. Sept. 23, 2016) (plaintiff suing furnisher under FCRA "must dispute ***facts*** underlying the purported inaccuracy; the presentation of ***legal defenses*** to payment will not suffice") (emphasis in original).

Plaintiff's anticipated new theory presumes that Chase had an obligation to resolve legal issues in a credit reporting dispute investigation. If Plaintiff meant to dispute the Chase trade line as inaccurate because Plaintiff should not be responsible for the Chase card he opened, all his possibilities of attack are plainly legal issues. Lack-of-capacity is a legal defense to payment.[50] If Plaintiff intended to dispute the Chase trade line as inaccurate because the charges at issue exceeded the scope of authority that Plaintiff gave Ms. Whitfield (who, as authorized user, was entitled to use the account to make purchases), that dispute would have required Chase to resolve

---

[50] In addition, it is completely speculative that Plaintiff's medical records would have led Chase to accept Plaintiff's dispute. Plaintiff has submitted no evidence that non-medical personnel such as Chase dispute investigators would have understood – or should have been expected to understand – that Asperger's syndrome makes an individual vulnerable to being taken advantage of. Even ***if*** Chase's investigators could have gained that understanding from the medical records, Plaintiff submitted no evidence in any of his other documents that Ms. Whitfield—an authorized user on the Chase account that he and Ms. Whitfield opened together in-person—in fact had taken advantage of him in any way.

DMWEST #41681034 v1                    16

a number of legal issues – *e.g.*, the scope of actual authority that Plaintiff gave Ms. Whitfield to use the Chase card; whether the alleged, unmentioned understanding between Plaintiff and Ms. Whitfield regarding scope of authority could be binding on Chase; whether Plaintiff could even dispute he cloaked Ms. Whitfield with authority to make the charges since he had designated her as an authorized user on the account. As a data furnisher, Chase was "neither qualified nor obligated to resolve" these issues as part of its FCRA investigation, and instead such issues "'can only be resolved by a court of law.'" *Gross*, 2020 U.S. Dist. LEXIS 187386, at *29-30 (quoting *Chiang*, 595 F.3d at 38).

### C. There Is No Evidence That Chase Willfully Violated The FCRA

Even were the Court to conclude that there is a genuine issue of fact on liability or causation that precludes summary judgment entirely for Chase, summary judgment should be granted at least on Plaintiff's claim for willful violation of the FCRA. A willful violation of the FCRA requires a finding that the defendant acted either: (1) with actual knowledge that its actions violated the FCRA; or (2) in "reckless disregard" of its statutory duty. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007). "To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020) (citing *Safeco*, 551 U.S. at 68). Summary judgment is appropriate on the issue of willfulness where "no reasonable jury could find willfulness based on the facts presented." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 n.45 (C.D. Cal. 2007).

Plaintiff has adduced no evidence to demonstrate a willful violation. Initially, there is no evidence that Chase understood Plaintiff's dispute to be anything other than a claim someone besides him opened his account. Chase did not understand Plaintiff was seeking relief from his account based upon his alleged manipulation by

third parties, and Chase certainly had no knowledge that the purported fraudsters in fact took advantage of Plaintiff. Moreover, there is no evidence that Chase acted in reckless disregard of its duties – Chase was presented with a fraudulent account opening dispute, it investigated it as such, and its investigation arrived at the correct conclusion. Any contention that Chase should have investigated some dispute ***other than*** fraudulent account opening is, at best, factually and legally uncertain for all of the reasons discussed above, and Chase's conduct was therefore not objectively unreasonable.

## V.   CONCLUSION

For the reasons stated above, Plaintiff's FCRA claim against Chase fails as a matter of law, and this Court should enter summary judgment in Chase's favor.

Dated this 6th day of July, 2021.

BALLARD SPAHR LLP

By: /s/ Joel E. Tasca
Joel E. Tasca
Nevada Bar No. 14124
BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of copy of the foregoing **DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT** was served this 6th day of July, 2021, upon each of the parties via electronic service through the United States District Court for the District of Nevada's CM/ECF filing system.

/s/ Adam Crawford
An Employee of Ballard Spahr LLP