UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHRISTOPHER PETRAS,<br><br>Plaintiff,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION *et al*,<br><br>Defendant. | Case No. 2:20-cv-00874-RFB-BNW<br><br>**ORDER** |

**I.     INTRODUCTION**

Before the Court is Defendant's Motion for Summary Judgment, ECF No. 83. For the reasons stated below, the motion is DENIED.

**II.    PROCEDURAL HISTORY**

On May 13, 2020, Plaintiff filed a Complaint alleging violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et. seq*. ECF No. 1. On July 23, 2020, Defendant JP Morgan Chase Bank, National Association filed an Answer. ECF No. 21. Discovery closed on June 7, 2021. ECF No. 63.

On July 6, 2021, Defendant filed the instant Motion for Summary Judgment. ECF No. 83. Plaintiff responded on July 27, 2021. ECF No. 86. Defendant replied on August 27, 2021. ECF No. 91.

### III. FACTUAL BACKGROUND

#### A. Undisputed Facts

The Court finds the following facts to be undisputed based on the record:

Plaintiff is an adult resident of Nevada who has been diagnosed with Asperger's Syndrome. In 2013, Plaintiff became acquainted with Earnest McCullough and Angela Whitfield. Plaintiff and Whitfield began to discuss starting a business together.

On August 7, 2017, during one of Whitfield's visits to Las Vegas, Plaintiff and Whitfield visited a Chase Bank branch together. Plaintiff provided his driver's license and military identification to the branch representative. Plaintiff opened a credit card in his name, and Whitfield was added as an authorized user on the account. Plaintiff was the primary cardmember and Whitfield, as an authorized user, was entitled to receive a credit card as well.

On November 11, 2019, Plaintiff submitted written dispute letters to Experian and Equifax, alleging that Whitfield and McCullough had engaged in identity theft related to Plaintiff's Chase credit card, as well as another credit card of Plaintiff's, issued by Navy Federal Credit Union ("NFCU"). Plaintiff stated that the Chase account was associated with a Michigan address which belonged to Whitfield and McCullough. Plaintiff noted that he had never been to Michigan and did not make any transactions in Michigan.

Along with the dispute letters, Plaintiff submitted several other documents to the Credit Reporting Agencies ("CRAs"), including a police report obtained from the Las Vegas Metropolitan Police Department ("LVMPD"); a May 24, 2019 demand letter that he sent to McCullough; text messages between Plaintiff and McCullough in which Plaintiff demanded McCullough pay him back; medical records regarding Plaintiff's Asperger's Syndrome; Chase billing statements; pages from Plaintiff's credit reports; and a copy of Plaintiff's driver's license. Later that month, Chase received Automated Credit Dispute Verifications ("ACDVs") from Equifax and Experian regarding Plaintiff's dispute. The ACDVs described Plaintiff's dispute as claiming "true identity fraud, account fraudulently opened." The documents that Plaintiff sent to the CRAs were also passed along to Chase.

In response to the ACDVs, Chase employee Jazmyn Carey initiated investigations into Plaintiff's dispute. Carey found that Plaintiff personally opened the Chase account using two forms of government issued ID, that Plaintiff added Whitfield as an authorized user on the account at the time it was opened, that Plaintiff verified the validity of certain transactions on the Chase card with a Chase representative by telephone in 2017, and that all transactions on the card not made by Plaintiff were made under an authorized user's name (Whitfield's). Based on this information, Carey concluded that the Chase account was validly opened. Carey's decision was later reviewed and approved by another Chase employee.

On December 2 and December 14, 2019, Plaintiff learned that Chase rejected his disputes and verified its reporting to Equifax and Experian. On December 23, 2019, Plaintiff submitted another credit dispute to TransUnion, again alleging that Whitfield and McCullough had engaged in identity theft related to the Chase and NFCU accounts. On December 31, 2019, TransUnion notified Plaintiff that it was honoring his fraud claims. TransUnion sent Chase a Block Trade notification. In response to the Block Trade notification, Chase conducted another investigation into Plaintiff's account and again found there was sufficient evidence that Plaintiff was liable on the Chase account. However, because Chase received a Block Trade notification from a Credit Reporting Agency, it was required to suppress all reporting on Plaintiff's Chase account, which it did on January 2, 2020.

B. Disputed Facts

The Court finds the following facts to be in dispute: whether Whitfield and McCullough exploited Plaintiff's disability to manipulate him into opening an account; whether Plaintiff knew he was responsible for the transactions made under the credit card; and whether Chase's investigation into the credit dispute was reasonable.

IV. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

substantive law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

## V. PARTIES' ARGUMENTS

Defendant argues the undisputed facts show that Chase's investigation was reasonable as a matter of law, and thus summary judgment should be granted in Defendant's favor. Defendant notes that under Ninth Circuit law, a furnisher's duty of conducting a "reasonable investigation" is defined by the amount and type of information that is provided to it form the CRA. Defendant argues that the ACDVs that Equifax and Experian sent to Chase described the dispute as one for "fraudulent account *opening*" – thus, Defendant's only duty was to investigate whether the Chase account was *opened* by someone other than Plaintiff or opened without Plaintiff's authorization. Defendant maintains that its investigation into the fraudulent account opening was reasonable.

Defendant notes that based on the nature of the dispute presented to the bank, Chase employee Carey reviewed the account information provided against Chase's Liability List, which includes the following inquiries: (1) whether the credit card application was applied for in a branch; (2) whether there is a signed application for the credit card at issue; (3) if payments have been made in the complaining party's name; (4) if there have been communications between Chase and the complaining party regarding the account at issue; and (5) the existence of any authorized users on the account besides the primary cardholder. During her investigation, Carey verified that

Plaintiff personally opened the account at a Chase branch; that he used two forms of government-issued ID; that he added Whitfield as an authorized user on the account at the time it was opened; that in 2017, Plaintiff verified credit card transactions with a Chase representative via telephone; and that the disputed Michigan-based transactions were made under an authorized user's name (Whitfield's). Carey also found that Plaintiff never notified Chase that Whitfield's authority to conduct transactions was revoked prior to the underlying charges being made. Based on these findings, Carey determined that there was no fraudulent account opening. Defendant adds that the investigation's conclusion was ultimately accurate, because Plaintiff himself admitted at his deposition that he himself opened the Chase account. Defendant argues this admission is fatal to Plaintiff's claim that Chase failed to conduct a reasonable investigation.

Defendant further contends that Plaintiff now impermissibly pleads a new theory of the case – one that was not alleged in his Complaint. According to Defendant, Plaintiff now argues that Chase had a duty to investigate some form of wrongdoing by the purported fraudsters, other than fraudulent account *opening* (e.g. that Chase should have realized during its investigation that Plaintiff was claiming that he should have been absolved of responsibility for the account due to the alleged fraudster's manipulation; or that Chase should have known that Plaintiff was challenging the validity of the transactions themselves). Defendant argues that Chase was never notified of the nature of the dispute that Plaintiff now appears to be claiming he intended. Plaintiff's dispute letter was vague as to what allegedly happened to him. It used words like "identity theft" and "fraud," which were consistent with the ACDV's statement to Chase that the account was allegedly opened by someone other than Plaintiff. Defendant argues that Plaintiff's dispute letter does not acknowledge that he himself opened the Chase account, that he made Whitfield an authorized user on the account, or that he was manipulated by the fraudsters such that he should be absolved of responsibility over the account. Nor, Defendant argues, did any of the other documents submitted by Plaintiff in connection with the dispute (e.g. Plaintiff's medical records, the Chase transaction history, etc.) suggest to Chase that the underlying transactions were at issue.

Further, Defendant argues that Chase had no duty under FCRA to resolve legal questions. Defendant contends that Plaintiff's new theory places the onus on Chase to resolve a number of legal issues, including: (1) whether Plaintiff had a lack of capacity to legally contract; (2) the scope of the authority that Plaintiff gave Whitfield when he made her an authorized user; and (3) whether the unmentioned understanding between Plaintiff and Whitfield regarding the scope of authority could be binding on Chase. As a data furnisher, Defendant argues it was "neither qualified nor obligated to resolve" these issues as part of its FCRA investigation, as such issues "'can only be resolved by a court of law.'" Gross v. CitiMortgage, Inc., No. CV-18-02103-PHX-ROS, 2020 U.S. Dist. LEXIS 187386, at *29-30 (D. Ariz. Oct. 8, 2020) (quoting Chiang v. Verizon New England Inc., 595 F.3d 26, 38 (1st Cir. 2010)).

Finally, Defendant argues that even if the Court concludes there is a genuine issue of fact regarding liability or causation, summary judgment should still be granted on Plaintiff's punitive damages claim, as there is no evidence that Chase willfully violated FCRA.

Plaintiff argues that a triable issue of fact exists regarding whether Chase's investigation was reasonable. Plaintiff argues that the dispute was styled from the start as an "account takeover" dispute, and that Defendant was on notice to investigate the legitimacy of the underlying transactions. By limiting its investigation solely to the issue of the account opening, Defendant conducted the wrong type of investigation. Further, Plaintiff argues, Defendant failed to conduct a reasonable investigation when it restricted its inquiry to its own internal records, and declined to interview witnesses or assess Plaintiff's claim that he was exploited as an autistic person. Plaintiff argues that a reasonable jury could find that Defendant did not meet its duties under FCRA by, *inter alia*: neglecting to interview Plaintiff or the alleged fraudsters, failing to contact the LVMPD about the police report, failing to call Plaintiff's doctors about his autism diagnosis, declining to review the transaction history, and neglecting to contact the merchants involved. Plaintiff further contends that the investigation would not have required Chase to answer any legal questions – to the contrary, Plaintiff only asked Chase to investigate simple and specific facts regarding the circumstances surrounding the fraudulent transactions.

Plaintiff also argues a triable issue of fact exists regarding the willfulness of Chase's conduct, and that the punitive damages claim should accordingly survive summary judgment. Plaintiff notes that willfulness determinations under FCRA are generally factual questions for a jury, and argues that there is sufficient evidence in the record for a jury to conclude that Chase willfully disregarded its obligations by misconstruing Plaintiff's dispute and investigating the wrong issue.

### VI. DISCUSSION

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009) (quotations omitted). To those ends, "the FCRA imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." Id. Under Section 1681s-2(b) of FCRA, a furnisher – such as a bank – has certain obligations that are triggered when it receives notice from the CRA that the consumer disputes the information reported. Id. at 1154. After receiving notice of such a dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) . . . ;
>
> (C) report the results of the investigation to the [CRA];
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information . . . ; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . . (i) modify . . . (ii) delete [or] (iii) permanently block the reporting of that item of information [to the CRAs].
>
> Id. (citing 15 U.S.C. § 1681s-2(b)(1)).

The investigation conducted under Section 1681s-2(b)(1)(A) must be "reasonable." Id. at 1155-

57.

To establish a violation of Section 1681s-2(b), a Plaintiff must prove that (1) Defendant is a "furnisher" of credit information; (2) Plaintiff notified the CRA that the reported information was inaccurate; (3) the CRA notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was, in fact, inaccurate; and (5) Defendant failed to conduct the investigation as required by § 1681s-2(b)(1). Corns v. Residential Credit Solutions, Inc., No. 2:15-cv-1233-GMN-VCF, 2016 U.S. Dist. LEXIS 27864, at *4 (D. Nev. Mar. 3, 2016) (citing Gorman, 584 F.3d at 1154).

The central issue in this case is whether Defendant conducted a reasonable investigation into Plaintiff's credit dispute. A "reasonable investigation" under FCRA "requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." Gorman, 584 F.3d at 1157. Whether a furnisher's investigation procedures were reasonable is evaluated "in light of what [the furnisher] learned about the nature of the dispute from the description in the CRA's notice of dispute." Id. at 1153. "An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." Id. at 1161.

Summary judgment "is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the reasonable man standard is thought ordinarily to preclude summary judgment." Id. at 1157 (quoting In re Software Toolworks, Inc., 50 F.3d 615, 621 (9th Cir. 1994)). That said, summary judgment is "not precluded altogether on questions of reasonableness" – it is appropriate "when only one conclusion about the conduct's reasonableness is possible." Id. (citations omitted).

The Court finds that a jury could conclude that Chase failed to conduct a reasonable investigation into Plaintiff's credit dispute, and thus summary judgment is inappropriate. First, the Court is unpersuaded that Defendant was only responsible for investigating whether the account was opened fraudulently or without Plaintiff's authorization. While the CRA notified Chase that Plaintiff's dispute pertained to an "account fraudulently opened," this does not mean that

Defendant did not have notice that Plaintiff was also challenging the underlying transactions. See Gorman, 584 F.3d at 1157 (stating that a furnisher's obligation to conduct a reasonable investigation arises when it receives notice of a dispute, which includes "all relevant information regarding the dispute that the [CRA] has received from the consumer" (alteration in original)). From the CRAs, Chase received a copy of Plaintiff's November 11, 2019 dispute letter, in which Plaintiff reported that he was disputing transactions totaling $2,257 on his Chase account. In pertinent part, Plaintiff stated he was contesting "delinquencies and inaccuracies" and "balances" arising from charges that were incurred in Michigan – a place that Defendant stated he had "never lived," had "never even been to," and which was the home state of the alleged fraudsters, McCullough and Whitfield. A reasonable juror could find that through these statements, Plaintiff was disputing not only the circumstances surrounding the account opening, but also the validity of the transactions.

      Further, a reasonable jury could conclude that the other documents received by the bank put Defendant on notice that Plaintiff was alleging that fraudsters were responsible for the underlying transactions. The police report, text messages, and May 2019 demand letter all indicate that McCullough and Whitfield allegedly "fraudulently incurred" charges on Plaintiff's credit cards. Though these documents focus mostly on Plaintiff's Navy Federal Credit Union account and McCullough's involvement, Plaintiff's dispute letter indicates that "McCullough and his girlfriend, Angela Whitfield, defrauded [Plaintiff] and took advantage of [him]," thus implicating Whitfield – a purported authorized user on the Chase card – in the fraudulent scheme writ large. Further, the dispute letter lists both the Chase account and the NFCU accounts as disputed accounts. A reasonable juror could expect that a Chase investigator would put the pieces together and realize that Plaintiff was challenging fraudulent transactions made on the Chase account by Whitfield.

      However, even if this Court were to assume that Defendant was responsible *only* for investigating a fraudulent account *opening* (and not the underlying transaction themselves), a jury could still find that the resulting investigation was unreasonable. Here, Defendant did not contact

a single witness – not the alleged fraudsters, the LVMPD, Plaintiff's doctors, the merchants involved, or Plaintiff himself. Instead, Chase limited its investigation to its own internal documents. Being that Plaintiff's dispute rested in part on the claim that the fraudsters tricked him into opening an account, it follows that the documents within Chase's possession would likely indicate that the account was opened legitimately. Courts in this Circuit have held that a reasonable investigation may require more than just a review of the furnisher's internal records, particularly when the internal records are themselves alleged to have been falsified or fraudulently made. See, e.g., Pongsai v. Am. Express Co., No. SA CV 19-1628-DOC (JDEx), 2020 U.S. Dist. LEXIS 198104, at *6 (C.D. Cal. Oct. 23, 2020) (denying summary judgment where a bank verified Plaintiff's identity against its own documents in response to Plaintiff's claim that a disputed account did not belong to her, and finding that "a jury may agree with Plaintiff that Defendant had a duty to do more than confirm ownership of the account using its existing internal records"); Soria v. U.S. Bank N.A., No. SA-CV-17-603-CJC (KESx), 2019 U.S. Dist. LEXIS 70068, at *28 (C.D. Cal. Apr. 25, 2019) (denying summary judgment where Plaintiff gave his friend – a U.S. Bank employee – his personal information, which the friend allegedly used to open several accounts without Plaintiff's consent, and U.S. Bank only reviewed its own internal records in verifying the accounts). A jury could therefore find that it was unreasonable for Chase to not expand its investigation beyond its own internal records. The Court finds this to be particularly true in light of the fact that Chase was on notice that Plaintiff had autism and could be susceptible to manipulation. Chase was in possession of Plaintiff's medical records, which reported, *inter alia*, that Plaintiff is "limited in judgment and insight," "is dependent upon his mother to support his day-to-day functioning," "has a hard time making decisions and has never been employed," and "is not capable of self support." ECF No. 83-12, at 13. While the Court does not necessarily credit these statements or conclude that they reveal Plaintiff was exploited by McCullough and Whitfield, the Court does find that a jury could conclude that based on these representations, it would have been reasonable for a Chase investigator to at least call Plaintiff to verify whether he seemed capable of voluntarily opening the disputed account.

The Court rejects Defendant's argument that this would have required Chase to make a legal judgment beyond the scope of its duties under FCRA. First, Defendant cites only non-binding caselaw for the proposition that furnishers are "neither qualified nor obligated" under FCRA to evaluate a possible legal objection to the status of a debt. Further, on the facts presented, this case is unlike Gross v. CitiMortgage Inc., the District of Arizona case relied upon by Defendant. In Gross, Plaintiff alleged that Arizona's anti-deficiency statute rendered Plaintiff's debt uncollectible, and that CitiMortgage was obligated under FCRA to investigate the applicability of the statute and report to the CRAs that the debt was uncollectible. 2020 U.S. Dist. LEXIS 187386, at *29 (D. Ariz. Oct. 8, 2020). Here, Plaintiff alleges that he did not intend to authorize Whitfield to make any of the disputed transactions, and that a more extended investigation into the circumstances surrounding the transaction history would have revealed that Plaintiff neither authorized nor benefited from any of the disputed charges. While the applicability of a state statute (at issue in Gross) is clearly a legal question, here, Plaintiff raised objections that were fundamentally factual in nature, and thus within Chase's duties to investigate under the FCRA.

The Court also rejects Defendant's argument that Plaintiff is improperly pleading a new theory of the case that was not initially alleged in the Complaint. The Complaint alleges that the Chase account was opened fraudulently,[1] but it also alleges that Plaintiff did not make or authorize any of the charges incurred on the account. See ECF No. 1, at ¶ 28 ("Plaintiff . . . did not authorize any charges in connection with the accounts and did not obtain any benefit from these accounts."); id. at ¶ 30-31 ("McCullough and Whitfield agreed to pay Plaintiff the full amount needed to satisfy these fraudulent debts . . . [but] never honored the promises . . . ."). The Complaint further alleges that it was unreasonable for Chase:

> to not contact the police department; to not contact Plaintiff for further information if needed; to not investigate Plaintiff's whereabouts on the date of the fraudulent

---

[1] See ECF No. 1, at ¶ 23 ("Mr. McCullough and Ms. Whitfield utilized Plaintiff's information without Plaintiff's prior knowledge or consent to open an account with Chase."); id. at ¶ 28; ("Plaintiff did not authorize the Chase account openings."); id. at ¶ 35 ("Plaintiff's disputes provided Defendants with all information available to Plaintiff to show that Plaintiff did not open the fraudulent accounts nor did Plaintiff authorize the Fraudsters to do so in Plaintiff's name.")

>transactions; and, to not investigate whether these transactions were characteristic of other transactions made by Plaintiff, or if Plaintiff ever resided at the addresses associated with the fraudulent accounts.
>
>Id. at ¶ 48.

Based on these allegations in the Complaint, the Court finds that the Complaint does not exclusively plead a theory of fraudulent account opening. The Complaint alleges in sufficient detail that it was unreasonable for Chase to fail to take more measures to verify the validity of the underlying transactions and the circumstances surrounding the account opening. The Court rejects Defendant's narrow reading of the Complaint.

Viewing all facts and inferences in the light most favorable to Plaintiff, the Court finds that there is more than one conclusion to be drawn about the reasonableness of Defendant's investigation. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014); Gorman, 584 F.3d at 1157. Accordingly, the Court denies summary judgment on the FCRA claim. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014); Gorman, 584 F.3d at 1157.

Finally, the Court also denies Defendant's Motion for Summary Judgment with respect to Plaintiff's claim for punitive damages. A plaintiff may recover punitive damages if he or she shows that a furnisher willfully violated the FCRA. 15 U.S.C. § 1681n(a). A willful violation of the FCRA requires a finding that the defendant acted either with actual knowledge that its actions violated the FCRA, or acted in "reckless disregard" of its statutory duty. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57–58 (2007). "To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." Marino v. Ocwen Loan Servicing LLC, 978 F.3d 669, 673 (9th Cir. 2020). Courts routinely find that the question of willfulness turns on factual determinations best left for a jury. See, e.g., Edwards v. Toys "R" Us, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. Nov. 5, 2007) (citing Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995)) (stating that willfulness under FCRA is "generally a question of fact for the jury"); Lenox v. Equifax Info. Servs. LLC, No. 05-01501-AA, 2007 U.S. Dist. LEXIS 34453, at *19 (D. Or. May 7, 2007) ("[T]he

determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact."); Cairns v. GMAC Mortgage Corp., No. CV 04-01840 PHX(SMM), 2007 U.S. Dist. LEXIS 16689, at *27 (D. Ariz. Mar. 5, 2007) ("[I]n this case, like in the overwhelming number of cases in which state of mind is dispositive, the issue of punitive damages is best left for the trier of fact to determine.").

Viewing all alleged facts and inferences in the light most favorable to Plaintiff, the Court finds that there is a genuine dispute of material fact as to whether Chase acted in reckless disregard of its statutory duty. A reasonable juror could infer from Defendant's failure to interview a single witness, for instance, that it acted in reckless disregard of its duty to conduct a reasonable investigation. As such, the Court denies summary judgment with respect to Plaintiff's claim for punitive damages.

### VII. CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 83) is **DENIED.**

**IT IS FURTHER ORDERED** that the parties shall submit a proposed Joint Pretrial Order by March 24, 2022. The proposed order should set forth trial dates beginning in September 2022.

DATED: February 22, 2022



_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**